UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**NAEEMAH DILLARD,**

             Plaintiff,

vs.

Case No.

Hon.

**CANAL STREET BREWING CO., L.L.C.**
d/b/a **FOUNDERS BREWING COMPANY,**
and **SPAIN'S BEST BEERS, INC.** d/b/a
**FOUNDERS BREWING COMPANY**,

             Defendants.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
Jack@michiganworkerlaw.com
*Attorney for Plaintiff*

_____/

## **COMPLAINT AND DEMAND FOR TRIAL BY JURY**

        There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff, **NAEEMAH DILLARD**, for her Complaint against Defendants Canal Street Brewing Co., LLC and Spain's Best Beers, Inc. (collectively "Founders"), stating the following:

## INTRODUCTION

1. Plaintiff Naeemah Dillard, an African American, was employed with Founders' Brewing Company in Detroit from June 2021 until April 2023, when the work environment became so objectively racially hostile that she had no choice but to resign. Plaintiff was promoted to a "part-time" management position for purely optic purposes as the result of prior accusations of racial discrimination against the company. On information and belief, management even vocalized this sentiment. Unlike Caucasian managers, Plaintiff was provided no serious focus area work. When management focus areas arose, Founders instead assigned this work to Caucasian service staff who were allowed to clock in at a high management rate. Plaintiff was also subjected to egregious racial harassment ranging from intentionally mispronouncing her name, to warning Plaintiff to be careful her toddler does not "steal any money", to stating that she has "not struggled enough to be black." When Plaintiff reported incidents of discrimination, she was either subjected to retaliation in the form of diminished hours or her complaints were dismissed altogether. Ultimately, the situation became so objectively hostile that Plaintiff had no choice but to resign. Furthermore, at least one Caucasian manager also resigned rather than be part of the ongoing discrimination she was being subjected to.

Within this Complaint, Plaintiff alleges she was discriminated against and terminated due to her race and in retaliation for protected activity in violation of 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et. seq.*

## PARTIES

2. Plaintiff Naeemah Dillard is an African American individual who was employed with the Defendants and resides in Detroit, Michigan, Wayne County.

3. Defendant Canal Street Brewing Co., LLC, d/b/a Founders Brewing Company, is a limited liability corporation headquartered in Grand Rapids, Michigan. Founders' Detroit taproom is located at 456 Charlotte Street, Detroit, Wayne County, Michigan 48201.

4. Defendant Spain's Best Beers, Inc. is a foreign profit corporation organized under the laws of the State of Florida and operates within the State of Michigan. Plaintiff was an employee of Defendant.

5. At all times relevant herein, Defendants acted by and through their agents and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## JURISDICITON AND VENUE

6. This Court has original jurisdiction of Plaintiff's claims under to 42 USC § 1981 pursuant to 28 U.S.C. § 1331.

7. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

8. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

9. Plaintiff Naeemah Dillard ("Plaintiff" or "Dillard") is African American, and a member of a protected class based on her race.

10. On or around June 8, 2021, Plaintiff began her employment with Defendants Canal Street Brewing Co., LLC and Spain's Best Beers, Inc. (collectively "Founders") as a server in its Detroit location.

11. In late June 2022, Plaintiff applied to fill an open "part-time" Tap Room management position. Plaintiff was interviewed by then General Manager Emily Habib ("GM Habib") and Tap Room Manager Justin Parent ("Parent"). According to Parent, GM Habib commented to him that it would be "great optics" to hire someone of color to be a Tap Room manager. ***Exhibit A*** Parent was shocked by the comment having been one of the managers who remained following previous litigation against Founders arising from allegations of racial discrimination.

13. On or around July 1, 2021, Plaintiff was officially promoted to the position of "part-time" manager.

14. Generally, Tap Room Managers are each assigned a "Focus Area." These Focus Areas include overseeing either (1) the Mug Club (Founders' membership club); (2) the Barrell Room (the Detroit locations' event space); (3) Tap Room scheduling; or (4) Tap Room employee training.

15. Plaintiff was the only Tap Room Manager who was not Caucasian.

16. From the start, Plaintiff was treated much differently than her Caucasian counterparts.

17. For example, Plaintiff was the only management employee required to still working serving shifts. While serving, Plaintiff was compensated as a server and not a manager.

Disparate Treatment as a Manager

18. Unlike Plaintiff, the previous Caucasian part-time managers were quickly promoted when focus areas and/or additional tasks arose. However, Plaintiff was overlooked for additional tasks and focus areas. Further, neither was required to work shifts serving.

19. Rather than provide Plaintiff with the unfilled Focus Area of Tap Room employee training, the duty was given to a Caucasian server who was allowed to clock in at a higher rate of pay while performing these historically management duties.

20. Similarly, when the Focus Area of scheduling opened up, Plaintiff was informed she would not be able to take on this duty as, ironically, she was still working serving shifts and it would allegedly be a conflict of interest.

21. In February 2023, GM Habib was promoted freeing up the General Manager Position. The position was filled by her close colleague Gail Mason ("GM Mason") In filing the GM role, GM Mason's previous Focus Area, beer supply and merchandise, opened up. Rather than provide these duties to Plaintiff, the duties were

5

given to a recently hired Caucasian host/bus boy. As with the others, this individual was allowed to clock in at a high rate of pay when performing these management duties. In taking on the tasks, the Caucasian individual became a full-time employee. Notably, fellow managers vocalized complaints about this individual prior to the promotion.

***Exhibit A***

22. Plaintiff was a part-time manager for nearly a year with no end in sight while Caucasian counterparts were promoted within a few months. As noted above, Defendants had countless opportunities to provide Plaintiff with full-time work, but instead shifted these management duties to Caucasian non-management staff—even giving them keys to the manager's office.

<u>Founders' Racially Hostile Work Environment and Plaintiff's Complaints of Harassment and Discrimination</u>

23. In addition to her general unequal treatment, Plaintiff has faced several incidents of harassment and discrimination for which she reported and no steps were taken.

24. In January 2022, Plaintiff was sexually harassed by an employee, Claude. Plaintiff reported the harassment from Claude to GM Habib. On information and belief, the incident was also reported by other present. Despite the complaints on behalf of Plaintiff, Claude continued working at Founders without issue and nothing was done.

25. In one instance, Plaintiff was scheduled to open Founders' Tap Room for the day with GM Mason and another Tap Room Manager. Due to trouble scheduling

6

childcare, Plaintiff brought her six year old daughter to work for a short period, prior to opening, until her mother could pick her up. When Plaintiff informed GM Mason, she warned Plaintiff to "make sure that her [six year old daughter] didn't steal any money." Plaintiff was appalled by the racist comment.

26. Plaintiff's name was habitually and intentionally pronounced and spelled wrong by Kitchen Manager Jason Belhart ("Belhart"). In or around October 2022, Plaintiff submitted an internal complaint against Belhart alleging discrimination[1].

27. Following her HR Complaint against Belhart, Plaintiff's hours were drastically reduced.

28. On information and belief, several complaints have been submitted regarding harassment by Belhart against women. None of these complaints have been taken seriously. Further, on information and belief, a Caucasian Tap Room Manager was given a larger raise specifically for being "quiet" about Belhart.

29. On or around February 2, 2023, Plaintiff submitted a verbal complaint to HR alleging retaliation for her complaints of harassment and discrimination. In the meeting, A meeting was held with HR employee Adam Geyer but nothing was done.

30. Plaintiff spoke with the Founders' Director who oversaw both the Detroit and Grand Rapids Taproom, Rick Smith ("DM Smith"), about the retaliation she was

---

[1] On information and belief, fellow Tap Room Managers, have submitted complaints to GM Habib regarding Belhart's racial harassment against Plaintiff relating to her name but nothing was done.

facing for submitting the HR Complaint. In response, he ignored Plaintiff's complaints and, instead, utilized baseball analogies to inform Plaintiff she was being "benched" and serves as a relief manager,  In doing so, Rick assured Plaintiff she was not having performance issues.

<u>Final Weeks and Constructive Discharge</u>

31. Over the course of March and April 2023, the work environment became objectively hostile towards Plaintiff. Further, there was a feeling of complete hopelessness for Plaintiff.

32. Around March/April 2023, Tap Room Manager Parent put in his two-weeks. According to Parent, he resigned because he no longer wanted to be part of the ongoing discrimination. ***Exhibit A***

33. Following Parent's notice of resignation, Plaintiff reached out to GM Mason to express her interest in Parent's Focus Area and position as a full-time manager, GM Mason confirmed Founders had no plans of offering Plaintiff the focus area or a full-time management position. After, Plaintiff reached out to DM Smith who essentially confirmed these sentiments.

34 In March/April 2023, a Caucasian employee, Alex, made a similar sexual harassment complaint against Claude, the individual for which Plaintiff had complained of over a year prior. Unlike Plaintiff's, the complaints of harassment made by the

8

Caucasian employee were taken seriously and ultimately Claude was terminated on April 9, 2023.

35. Following the termination of Claude, Plaintiff was informed that a Caucasian coworker, Elizabeth, stated to coworkers that Plaintiff "doesn't struggle enough to be black" upon learning that Plaintiff previously complained about Claude. Plaintiff reported the comment to GM Mason who responded that nothing could be done as there was no supporting evidence. No investigation was performed.

36. On April 15, 2023, Plaintiff observed Elizabeth, the individual who made the racially insensitive comment about Plaintiff, training new employees—another duty Plaintiff was passed over for.

37. Around the same time, on information and belief, a new Caucasian employee, Scott, was hired and informed there was "management opportunities" for him. Plaintiff was working during Scott's first shift. Scott informed Plaintiff that he had already applied for a now posted management position of which Plaintiff was not informed of or considered for. Unaware of Plaintiff's situation, Scott excitedly informed Plaintiff he was excited he was being considered for management so quickly.

38. In light of the objectively racially hostile and hopeless work environment, Plaintiff submitted her notice of resignation.

39. Plaintiff's final day of employment was April 23, 2023.

40. On or around April 24, 2023, Plaintiff submitted a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Plaintiff will seek to amend her Complaint to add additional claims pursuant to Title VII upon being issued the right to sue.

## COUNT I
## RACIAL DISCRIMINATION - 42 U.S.C. § 1981

41. All preceding paragraphs are incorporated by reference.

42. Plaintiff is a member of a protected minority class on the basis of her race.

43. As an employee, Plaintiff had a contractual employment relationship with Defendants.

44. During the course of Plaintiff's employment with Defendant, Defendants violated Plaintiff's rights by depriving her of his right to the enjoyment of all benefits, privileges, terms and conditions of employment "as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981(b), as amended.

45. Plaintiff was treated differently than her Caucasian comparators.

46. Plaintiff was denied promotion opportunities due to her race.

47. Plaintiff alleges that she was constructively discharged in violation of her right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

48. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss

10

vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT II
## RACIAL DISCRIMINATION - ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

49. All preceding paragraphs are incorporated by reference.

50. At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

51. Defendants treated Plaintiff differently than similarly situated Caucasian employees.

52. Plaintiff's race was a factor that made a difference in Defendants' treatment of the Plaintiff.

53. Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

54. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the

ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT III
## HOSTILE WORK ENVIRONMENT - 42 U.S.C. § 1981

55. All preceding paragraphs are incorporated by reference.

56. Plaintiff is a member of a protected minority class on the basis of her race.

57. Plaintiff was subject to unwelcome harassment and discriminatory treatment based on her protected status.

58. Plaintiff had coworkers intentionally mispronounce her name and comment to her regarding perceptions of her based on her race. Plaintiff reported these discriminatory comments but her complaints were ignored.

59. Plaintiff complained of discrimination and harassment but these claims were not investigated or otherwise any investigation was less than that required by company policy.

60. Plaintiff was required to perform serving shifts while comparable Caucasian employees were not.

61. Plaintiff was denied additional responsibilities for lesser qualified individuals.

62. Plaintiff was denied promotion opportunities.

53. The work environment was abusive for Plaintiff.

64. The harassment and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of her employment.

65. Defendants were aware of the harassment and abuse Plaintiff was facing and failed to act.

66. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

**COUNT IV**
**RACIAL DISCRIMINATION (HOSTILE WORK ENVIRONMENT)**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***

67. All preceding paragraphs are incorporated by reference.

68. Plaintiff faced severe harassment in the workplace due to her race.

69. The harassment and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of his employment.

70. Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

71. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss

vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT V
## RETALIATION - 42 U.S.C. § 1981

72. All preceding paragraphs are incorporated by reference.

73. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when she complained of the racial discrimination, harassment, and equal treatment she was subjected to in the workplace.

74. Defendants retaliated against Plaintiff due to this protected activity.

75. Defendants significantly reduced Plaintiff's hours, affecting her compensation and chance of promotion, following her protected activity.

76. Defendants denied Plaintiff any additional focus areas or duties preventing Plaintiff from promotion.

77. Defendants treated Plaintiff differently than comparable Caucasian employees in retaliation for her protected activity.

78. Defendants constructively discharged Plaintiff in retaliation of Plaintiff's protected activity.

79. Defendants' adverse actions towards Plaintiff's employment on this basis violates 42 U.S.C. § 1981.

80. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT VI
## RETALIATION - ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

81. All preceding paragraphs are incorporated by reference.

82. Plaintiff engaged in protected activity when she complained of the racial discrimination, harassment, and unequal treatment he was subjected to in the workplace.

83. Defendants retaliated against Plaintiff due to this protected activity.

84. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful practices in violation of § 1981 and ELCRA;

b. Award Plaintiff all lost wages and benefits, past and future, to which she is entitled;

c. Award Plaintiff appropriate equitable relief;

d. Award Plaintiff compensatory damages;

e. Award Plaintiff punitive damages;

f. Award Plaintiff reasonable attorney fees, costs and interest; and

g. Award such other relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
jack@michiganworkerlaw.com
*Attorney for Plaintiff*

DATE: May 1, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**NAEEMAH DILLARD,**

        Plaintiff,

vs.

**CANAL STREET BREWING CO., L.L.C.**
d/b/a **FOUNDERS BREWING COMPANY,**
and **SPAIN'S BEST BEERS, INC.** d/b/a
**FOUNDERS BREWING COMPANY**,

        Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
Jack@michiganworkerlaw.com
*Attorney for Plaintiff*

_____/

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Naeemah Dillard hereby demands a trial by jury.

        Respectfully submitted,

        By: /s/ Jack W. Schulz
        Jack W. Schulz (P78078)
        SCHULZ LAW PLC
        645 Griswold St Ste 4100
        Detroit, MI, 48226
        (313) 788-7446
        jack@michiganworkerlaw.com
        *Attorney for Plaintiff*