UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NAEEMAH DILLARD,<br><br>      Plaintiff,<br><br>v.<br><br>CANAL STREET BREWING<br>CO., L.L.C., et al.,<br><br>      Defendants. | Case No. 23-cv-11019<br>Honorable Shalina D. Kumar<br>Magistrate Judge Anthony P. Patti |

**OPINION AND ORDER TAKING DEFENDANTS' MOTION TO COMPEL UNDER ADVISEMENT (ECF NO. 18) AND GRANTING LIMITED DISCOVERY**

I.  INTRODUCTION

  Plaintiff Naeemah Dillard brings this action alleging racial discrimination, harassment, and retaliation by her former employer, defendant Canal Street Brewing Co. d/b/a Founders Brewing Company ("Founders").[1] ECF No. 16. Founders filed a motion to compel arbitration and stay this case. ECF No. 18. The motion has been fully briefed, and the Court heard oral argument on January 24, 2024. For the following reasons,

---

[1] "Founders" as used throughout this opinion and order also includes moving defendant Spain's Best Beers, Inc.

the Court takes Founders' motion under advisement and orders limited discovery under Federal Rule of Civil Procedure 56(d).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Dillard began working for Founders in June 2021. *See* ECF No. 16. According to Founders, Paycor, Founders' payroll administrator, gave Dillard access to various documents and agreements, including a Confidentiality Agreement (the "Agreement"), which included an agreement to arbitrate "all claims and disputes arising out of or during [her] employment." ECF No. 18-2, PageID.401. By way of a sworn declaration, Founders' Director of Human Resources Audrey Strieter attests that Dillard first accessed these documents on June 11, 2021, and electronically signed them on June 14, 2021, after her virtual orientation. ECF No. 18-3, PageID.406.

The bottom left-hand corner of each page of the Agreement is stamped with Dillard's electronic signature, name, unique username (Ndillard21), the date and time she electronically signed the Agreement, and the IP address of the device from which she signed it. ECF No. 18-2. As Strieter attests: "When an employee electronically signs a document at Founders, an electronic stamp *is generated* onto every page of the document." ECF No. 18-3, PageID.406, ¶ 4 (emphasis added).

Strieter's declaration is silent on whether Paycor's document signing program requires a signor to scroll through the entire document before entering a signature. *See id*. It also provides no details on how and by whom the UserID was generated or whether access to documents was secured by unique password. *Id*. Aside from the electronic stamp, Founders makes no reference to any verifying or authenticating information, such as a receipt-confirming email generated for the Agreement. *See id*.

Dillard also attests by sworn declaration that, during the completion of the online employment forms on her phone, she "absolutely did not see or sign an arbitration agreement." ECF No. 19-2, PageID.435, ¶ 5. She also attests that no one at Founders ever mentioned, referenced, or discussed the existence of an arbitration agreement. *Id*. at ¶ 8. Dillard declares that she reviewed physical copies of the employee handbook, but it did not contain an arbitration agreement. *Id*. at ¶ 7.

Founders argues that the valid, binding arbitration agreement for all claims and disputes arising out of her employment, which Dillard electronically signed, must be enforced. Dillard argues that genuine issues of material fact as to the formation of the Agreement preclude the granting of Founders' motion and require limited discovery under Rule 56(d)

followed by a trial under 9 U.S.C. § 4. She also argues that the arbitration agreement was superseded by language in a later-issued employee handbook.

III. DISCUSSION

The Federal Arbitration Act requires district courts to compel arbitration of claims covered by a valid arbitration agreement. *Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795, 797–98 (6th Cir. 2023) (citing 9 U.S.C. § 4). The party seeking arbitration must prove that such an agreement exists. *Id*. at 798 (citing *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 839 (6th Cir. 2021)). Courts look to general principles of state contract law to determine whether a valid arbitration agreement exists. *Id*.

The Court first addresses Dillard's argument that, to the extent the arbitration agreement within the Agreement was ever valid, it was nullified by the terms of a superseding employee handbook issued after Founders merged to form a new entity. Dillard cites the superseding handbook's language: "any previous policies or representations relating to my employment are no longer in effect, having been replaced by [this] Handbook." ECF No. 19-5, PageID.602, ¶ 2. Contrary to Dillard's argument, the new handbook explicitly preserves the terms of the

Agreement. Indeed, the very next paragraph to the one Dillard quotes plainly affirms that the "Agreement that I executed as a condition of my employment and *all the terms* in the . . . Agreement[] will remain in full force and effect. If there is any conflict between this Handbook and . . . the Agreement, the terms of [the Agreement] will control." *Id*. at ¶ 3 (emphasis added). By its own clear terms, the new employee handbook did not invalidate the Agreement or the arbitration provision subsumed within it.

The Court thus must determine whether the parties formed a valid arbitration agreement at the outset. A motion to compel arbitration under § 4 of the Federal Arbitration Act is treated like a Rule 56 motion for summary judgment, so, as the moving party, Founders has "the initial duty to present evidence that would allow a trier of fact to find all required elements of a contract . . . because it bore the burden of proof on its contract claim under § 4." *See Boykin*, 3 F.4th at 839. Under Michigan law, valid contracts require an offer and an unambiguous acceptance in strict conformance with that offer. *See Kloian v. Dominos Pizza LLC*, 733 N.W.2d 766, 770 (Mich. Ct .App. 2006). "Whether the parties have mutually agreed to be bound [by contract] 'is judged by an objective standard, looking to the express words of the parties and their visible acts.'" *Hergenreder v. Bickford Senior Living*

*Group, LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (quoting *Kloian*, 733 N.W.2d at 771).

Dillard attests in her sworn declaration that she did not agree to the arbitration provision within the Agreement because she did not see it or sign it. ECF No. 19-2, PageID.435, ¶ 5. Founders argues the electronic signature recorded on the Agreement objectively manifests her agreement to be bound to its terms, including the arbitration provision. "But an electronic signature is legally valid only when made by the action of the person the signature purports to represent—which is itself a question of fact." *Bazemore*, 74 F.4th at 798 (internal quotations omitted) (applying the Uniform Electronic Transactions Act [UETA], as adopted by Kentucky); *accord Bronson Health Care Group, Inc. v. Esurance Property and Casualty Ins. Co.*, 2023 WL 6320144, at *7, ___N.W.2d ___ (Mich. Ct. App. Sept. 28, 2023) (applying UETA, as adopted by Michigan).

In *Bazemore*, as here, the defendant seeking to enforce the arbitration agreement pointed to the electronic signature of the plaintiff, Bazemore, who argued that he did not agree to the arbitration provision. 74 F.4th at 798. Bazemore submitted a sworn declaration in which he said he never saw the arbitration agreement and "had never heard about it." *Id*. at 797-98. Notwithstanding testimony from the defendant that the electronic

document containing the arbitration agreement required Bazemore to scroll through the entire agreement before signing it, "Bazemore's testimony that he never saw the agreement was . . . enough to create a genuine issue as to whether he signed it." *Id*. at 798.

Dillard, like the plaintiff in *Bazemore*, testified under penalty of perjury, that she never saw or signed the arbitration agreement. ECF No. 19-2, PageID.435, ¶ 5. The record here even lacks evidence that the Agreement required Dillard to scroll through the entire document before she was permitted to sign, evidence that in *Bazemore* still fell short in proving the existence of a valid signature. Under *Bazemore*, Dillard's sworn declaration creates a genuine issue of fact as to whether she agreed to the arbitration agreement.

At oral argument, Founders urged the Court to follow the ruling in *Anderson v. Crothall Healthcare Inc.*—that a party's own assertion, without evidentiary support, is not sufficient to create a genuine issue of material fact as to the legitimacy of an electronic signature. 2022 WL 3719834 (E.D. Mich. Aug. 29, 2022) (collecting cases). The Court first notes that *Anderson*, an unpublished district court case, was decided before the Sixth Circuit issued and published its *Bazemore* decision. And, even if *Anderson*

had precedential value, its facts are distinguishable from the ones before this Court.

In *Anderson*, the record indicated that the plaintiff, who denied the existence of an agreement to arbitrate, "received a confirmation email listing all of the documents she signed during her onboarding process, including the [arbitration agreement]." *Anderson*, 2022 WL 3719834, at *5. Founders has not provided any such confirming email, or any other corroborating records verifying and authenticating Dillard's signature or the viewing of the entire Agreement.

Founders points to the stamp at the bottom of each page of the Agreement as proof that Dillard saw, agreed to, and signed the Agreement in its entirety. See ECF No. 18-2. The stamp reflects Dillard's electronic signature, along with a UserID, the date, and exact time of the signature and the IP Address associated with the signature. *Id*. But, as noted in Strieter's sworn declaration, "[w]hen an employee electronically signs a document at Founders, an electronic stamp *is generated* onto every page of the document." *Id.* at PageID.406, ¶ 4 (emphasis added). This testimony suggests that a single signature placed at the end of the document, which may or may not have been viewed before accepting a signature, was populated throughout the document as a stamp appearing on the bottom of

each page. The generated stamp alone does not disprove Dillard's testimony that she never saw or signed the arbitration agreement.

Dillard has sufficiently placed the formation and her alleged signing of the arbitration agreement in issue. *See Bazemore*, 74 F.4th at 798. Because summary judgment (and, by extrapolation, a motion to compel arbitration under 9 U.S.C. § 4) can be supported or defeated by citing a developed record, the Court must allow adequate discovery on formation issues before resolving Founders' motion to compel arbitration. *See Fania v. KIN Insurance, Inc.*, 2023 WL 3587753, at *4 (E.D. Mich. May 22, 2023) (citing *Boykin*, 3 F.4th at 842).

## IV.  CONCLUSION

The Court will permit the parties to conduct limited discovery on formation issues related to the arbitration agreement and Dillard's alleged electronic signature. The parties may supplement their briefing on Founders' motion to compel arbitration upon completion of the limited discovery. Based upon the supplemental briefing, the Court will determine if it must compel arbitration or "proceed summarily" to a trial on remaining disputed factual issues regarding formation. See 9 U.S.C. § 4.

**IT IS ORDERED** that Founder's motion to compel arbitration (ECF No. 18) is **TAKEN UNDER ADVISEMENT**.

Discovery for the limited purpose of addressing the arbitration agreement formation and electronic signature issues will be permitted until **April 2, 2024**. The parties must submit any supplemental briefs by **April 23, 2024**. Any issue decided by the Court in this order will not be reconsidered.

    **IT IS SO ORDERED**.

                                          s/Shalina D. Kumar
                                          SHALINA D. KUMAR
                                          United States District Judge

Dated: February 6, 2024